JOHN S. EDWARDS v. THE MAYOR AND ALDERMEN OF JERSEY CITY.

The commissioners appointed under the act of March 26th, 1873, (*Pamph. L., p. 442*,) had no right to revise the assessment of one who had paid his assessment before the passage of said act; unpaid assessments only were within the act.

In error.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendants in error, *Leon Abbett.*

The opinion of the court was delivered by

VAN SYCKEL, J.    In 1870, an assessment was made upon the property of the plaintiff, for grading and flagging Webster avenue, amounting to $1550.06.

This assessment was certified into the Supreme Court, where it was confirmed November 29th, 1871.    In March, 1872, the judgment of the Supreme Court was brought into this court by writ of error, and pending said writ of error, the plaintiff paid the said assessment under protest.

On the 26th of March, 1873, an act was passed, entitled "An act to adjust unpaid assessments in Jersey City," under ·which the commissioners named in said act re-assessed the plaintiff, for the same improvement, with the sum of $640.99. *Pamph. L.*, 1873, *p.* 442.    This suit is brought by the plaintiff to recover of the city the amount paid for the assessment of March 23d, 1870, less the re-assessment of $640.99.    The judgment of the court below, in favor of the plaintiff, is now here for review.

The case turns upon the question whether the act of March 26th, 1873, authorized a new assessment against those who, prior to its passage, had paid their assessments.    The first section of this act requires the judges of the Supreme Court to appoint three commissioners to revise, alter and adjust all unpaid assessments, whether heretofore set aside by order of any court of this state or otherwise, within a period of five years prior to the approval of this act, for city improvements, which are or may be disputed.    Under this section of the act the commissioners acquire their jurisdiction to lay an assessment, and unless the plaintiff can show that he is within it, his action can derive no support from the re-assessment, upon which he relies.

By the title of the act, it applies to unpaid assessments, and persons who had paid their assessments before its passage must be excluded from its operation and benefit, unless it is held to apply to cases where the entire assessment against each individual assessed for any improvement, has not been paid.    A

VOL. XI.                    M

careful examination of the act has convinced me that the latter interpretation is not the true one.

The preamble recites that it would be for the benefit of the city, and of the individuals whose property is subject to such assessments, to have the same adjusted. The purpose of the act was to confer a benefit upon the city, and also upon those whose property was subject to unpaid assessments. The property of those who had paid their assessments could no longer be subject to them, and clearly they are not within the language of the preamble. The preamble refers to unpaid individual assessments, and there is nothing in the first section of the act to indicate that the term "unpaid assessments" was used in any other sense.

Under the contention of the plaintiff, if every person assessed, but one, had paid his assessment, the whole assessment must be revised upon the application of that one person. If such had been the intention, some provision would have been made to allow those who had paid to set off their payments against the re-assessment. On the contrary, the seventh section declares that the re-assessments shall be a lien upon the property on which they are laid, and shall be collected in the manner provided in the city charter, giving no recognition to the fact of a prior payment, and no means of receiving the benefit of it, except by resorting to litigation.

After the payment, and prior to the passage of the act of 1873, the title of the property may have passed to a purchaser who relied upon the fact that the assessment had been paid. Such purchaser could have no interest in a re-adjustment of the assessment, and would be subject to have a lien imposed upon his premises for a sum in excess of the former assessment, for which he would have a doubtful remedy against his grantor. The act is silent as to the mode in which prior payments are to be appropriated or the equities arising between vendor and purchaser, under such circumstances, adjusted. If it had been within the contemplation of the framer of this law to disturb things that were settled, some provision would have been made for difficulties that were so apparent.

This view is supported by the fact that, by the ninth section of the act, the costs in all cases of *certiorari*, pending in the Supreme Court at the time of its passage, were to be paid by the city, without any provision being made for an allowance to those who had paid the first assessment. This express provision for the lesser matter, without any reference being made to the greater, raises a presumption too strong to be resisted, that the statute was not intended to operate upon the case before us.

Giving to the term " unpaid assessments " its ordinary signification of " unpaid individual assessments," the act will afford a relief as wide as its preamble declares the mischief to be. The words " unpaid assessments " are jurisdictional words, and therefore the action of the commissioners must be limited to such assessments as are embraced in that term. The third section of the act does not enlarge the jurisdiction ; it merely prescribes the mode in which the machinery is to be set in motion. The direction that the commissioners shall revise the whole assessment was necessary in order that they might show affirmatively, in their report, that the proper proportion was preserved between all persons originally subject to the burden of paying the cost of the work.

The act required their judgment as to the just proportion of benefits conferred, and that could not appear unless they considered and certified the amount which should be assessed against all—those who had paid as well as those who had not; but no binding re-assessment could be made against those who had paid the first assessment. *Ropes* v. *Essex Public Road Board, ante p.* 64.

The fact that the plaintiff paid his assessment under protest, cannot make any difference, because, having paid it, although under protest, it could not be an unpaid assessment within the jurisdiction of the commissioners, under the act of 1873, to revise. The commissioners were, therefore, without power to bring the plaintiff's case within the rule laid down in *Mayor, &c., of Jersey City* ads. *Riker*, 9 *Vroom* 225.

This conclusion is clearly in accordance with public policy.

The interpretation upon which the plaintiff's action is founded would re-open to litigation all paid assessments, whether paid under protest or not, and involve the city, already over-burdened with debt, in a liability to refund large sums of money, for which no provision has been made, and thus this legislation, framed with the declared purpose of quieting, would be used to foment and incite contention, by disturbing matters long since settled.

In my opinion, the judgment below should be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, DAL-RIMPLE, DEPUE, DIXON, REED, SCUDDER, VAN SYCKEL, WOODHULL, CLEMENT, DODD, GREEN, LILLY.    13.